## HOFFMAN v. UNITED STATES.

(Circuit Court of Appeals, Seventh Circuit. May 10, 1926.)

No. 3698.

1. **Contempt** ⟲72—**Sentence of both fine and imprisonment for disobedience of writ of commitment held authorized, when pertaining to two different persons on separate occasions (Judicial Code, § 268 [Comp. St. § 1245]).**

Sentence of both fine and imprisonment for sheriff's disobedience of federal writ of commitment, by permitting prisoners to leave jail, *held* authorized, under Judicial Code, § 268 (Comp. St. § 1245), where disobedience was in regard to two different persons, on different occasions, constituting separate offenses.

2. **Contempt** ⟲61(4)—**Sheriff, after waiving alleged failure to file petition against him charging contempt, with knowledge that it was proposed to punish him separately for disobedience of separate writs of commitment, held so punishable.**

Where sheriff, in contempt proceeding for disobedience of writs of commitment, stipulated that alleged failure to file petition against him would be waived, and that he had been fully advised and informed of "contempt" which he was required to defend, and he then had knowledge that it was proposed to punish him separately for disobedience of different writs, he could be so punished, despite failure to use word "*contempts*" in stipulation.

3. **Contempt** ⟲60(3)—**Charge of contempt by sheriff of writ of commitment need not be proved beyond reasonable doubt (Jones' & A. Ann. St. III. c. 75, §§ 4, 5, and chapter 125, §§ 17, 18).**

In view of Jones' & A. Ann. St. Ill. c. 75, §§ 4, 5, and chapter 125, §§ 17, 18, relative to duties and powers of sheriffs, it is not necessary, to support finding of contempt for disobedience of writ of commitment, that charge be proved beyond reasonable doubt.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois; James H. Wilkerson, Judge.

Peter M. Hoffman was found guilty of contempt (13 F.[2d] 269), and he brings error. Affirmed.

Alfred S. Austrian, of Chicago, Ill., for plaintiff in error.

John E. Byrne, of Chicago, Ill., for the United States.

Before EVANS, PAGE, and ANDERSON, Circuit Judges.

PAGE, Circuit Judge. The District Court found plaintiff in error guilty of contempt, because he did not, as sheriff of Cook county, Ill., take and keep two certain prisoners in the Cook county jail, as commanded. One of the prisoners was delivered into possession of the sheriff on October 11, 1924, under a sentence for one year; the other was so delivered on November 11, 1924, for a like term.

As to the prisoner first committed, the court found that the sheriff, in disobedience of the order of commitment, had permitted him to go at large many times, and fined the sheriff therefor $2,500. As to the second commitment, the court found: (a) That, in disobedience, the sheriff had permitted the prisoner to leave the jail some 90 times, for the ostensible purpose of going to a dentist; (b) that at many other times he was permitted to go at large at his own will and pleasure; and (c) that, in further disobedience, the sheriff had ordered his jailer, Westbrook, to allow the criminal to leave the jail and go to a dentist's office. On each of said findings the court sentenced the sheriff to a term of 30 days in jail, such jail sentences to commence and run concurrently. The sheriff has not paid his fine nor served any part of his sentence.

It is urged that: (a) The sentence of both fine and imprisonment was error; (b) there was no competent evidence to support any finding of contempt. If there was but one contempt, the punishment should have been fine or imprisonment. Section 268, Judicial Code (Comp. St. § 1245).

[1] In support of the contention that there was a double penalty, plaintiff in error urges that prisoners are held under the judgment of the court, and not under the mittimus. The authorities cited do not support the contention. Of course, the mittimus must be supported by a judgment. All that is said in Ex parte Wilson, 114 U. S. 417, 421, 5 S. Ct. 935, 937 (29 L. Ed. 89), cited, is that: "The certified copy of the record of the sentence, * * * if valid upon its face, is sufficient to authorize the keeper to hold the prisoner, without any warrant or mittimus." We deem that unimportant, because the prisoners were sent there, as appears, under separate writs of commitment. Here, a part of the offenses, for which the sheriff was called to answer,

pertained to disobedience regarding the imprisonment of one man, and a part to the other. Disobedience as to one prisoner of one writ, on one day, and of another writ, as to another prisoner, on another day, are separate offenses.

It is further urged that plaintiff in error was charged with only one contempt. Some question arose upon the hearing about the petition against Hoffman. "Thereupon the court inquired of counsel for said Peter M. Hoffman as to whether or not any claim would be made by said respondent as to the alleged failure of the United States attorney to file a petition against said respondent Hoffman charging contempt of court." In response thereto, Hoffman "waived any objection to said proceedings upon the alleged failure to file a petition charging said respondent with contempt of court," and stipulated that he "had been and was then fully advised, and had been duly, properly, and sufficiently informed, of the contempt against which he was required to defend."

[2] The claim is that plaintiff in error only stipulated that he was properly informed of "the contempt," not of a dozen or more contempts. Plaintiff in error was stipulating, not that he knew what was charged against him in any pleading, but that he was fully informed as to what he was called to defend. The facts were then all before the court, and plaintiff in error, before the stipulation was made, knew, not only the facts, but that it was proposed to punish him separately for disobedience of each writ of commitment. He was not misled by the use of the word "contempt," instead of the word "contempts." Whether permitting one of the prisoners to be absent from the jail many times on different days in different months constituted one offense, or many offenses, we need not decide, because the sentences for the three separate contempts found are made concurrent.

[3] In support of the contention that there was no competent evidence to support the finding of any contempt, plaintiff in error seeks to invoke in his own behalf, as sheriff, the rule that, to justify conviction of a criminal charge, the charge must be proven beyond a reasonable doubt. We are of opinion that a sheriff, called to answer before a court as to the manner of his performance of a lawful order of the court, may not shelter himself behind that rule. The office of sheriff had its beginning ten centuries ago. The sheriff has always been an officer with great powers and many responsibilities and duties. At common law he was the chief executive law officer of his county, and had the power to call to his assistance, as the peace officer of the county, any or all of the male population. The office of sheriff, in this country, is a common-law office, and certain of its functions are fixed by statute in the various states. In Illinois, the statutes provide that he shall, under the mandates of the courts, both state and federal, take and keep in a common jail prisoners sentenced and committed to his care (sections 4 and 5, c. 75, Jones & Addington's Illinois Stats.), and, in addition to the many other duties imposed upon and powers vested in him, the plaintiff in error here, as sheriff, may call to his aid and assistance the power of his county (sections 17 and 18, c. 125, Jones & Addington's Ill. Stats.). Such an officer, with such powers, has never been, in England or America, and should not be, permitted to make many excuses for failure to perform his duties. See Blackstone's Com. vol. 4, par. 130; Wharton's Crim. Law (10th Ed.) vol. 2, c. 33.

The law required plaintiff in error, before entering upon his duties, to take the oath prescribed by the Constitution of the state: "I do solemnly swear that I will support the Constitution of the United States, and the Constitution of the state of Illinois, and that I will faithfully discharge the duties of the office of sheriff according to the best of my ability." It is unthinkable that a sheriff, to whom a court has delivered a prisoner under order of commitment, when called upon to answer as to the manner in which he has performed the commands of the writ, may say, "I will not answer," or "You, the court, must prove beyond a reasonable doubt that I have not obeyed the writ." He is an officer of the court, and subject at any time to answer the court as to how he has performed the affirmative duties imposed upon him by a writ.

Much reliance is placed upon a former decision of this court—Garrigan v. U. S., 163 F. 16, 89 C. C. A. 494, 23 L. R. A. (N. S.) 1295. There is no parallel between that case and the case at bar. We deem it unnecessary to do more than call attention to the fact that there a stranger to the writ of injunction, who claimed he did not know that there was such a writ, was charged with its violation. Here the sheriff, under a writ delivered into his hands, requiring affirmative action regarding the prisoners delivered into his possession under that writ, is seeking to excuse himself by simply saying that he did not have personal knowledge as to whether he did his duty or not.

Counsel, in argument in open court, said that they could not defend the conditions in the county jail regarding the imprisonment

of the men in question, and that they would not attempt to do so. One main excuse is offered by the plaintiff in error for the almost daily absences from the jail, for hours at a time, of the prisoners in question, and that is that they were permitted, through the wrongful acts of the jailer, without plaintiff in error's personal knowledge. Section 2, c. 75, Jones & Addington's Illinois Statutes, makes the sheriff the keeper of the jail of the county, with custody of all prisoners in such jail. Section 3 provides that he may appoint an assistant jailer under him, and remove him at pleasure, for whose conduct he shall be responsible. Sections 13 and 14, c. 125, are to the same effect.

Whether plaintiff in error should legally be excused from responsibility for the malodorous conditions shown, if the evidence had shown that he did not have personal knowledge of those conditions, it is not necessary for us to decide, nor do we rest our decision upon the proposition that Hoffman's guilt need not be proven beyond a reasonable doubt, because the record affirmatively discloses evidence of matters of which he had personal knowledge sufficient to prove him guilty beyond a reasonable doubt of contemptuous violations of both writs of commitment.

The judgment should be and is affirmed.